UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL RING,

                  Petitioner,                Civil Action No. 2:12-CV-14654
                                               Honorable Lawrence P. Zatkoff

v.

SHIRLEE HARRY,

                  Respondent.

_____/

OPINION & ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING
A CERTIFICATE OF APPEALABILITY, AND DENYING PERMISSION TO PROCEED ON
APPEAL IN FORMA PAUPERIS

        This matter is before the Court on Petitioner's request for habeas relief pursuant to 28 U.S.C.

§ 2254. Petitioner was convicted after a jury trial in the Livingston Circuit Court of first-degree

criminal sexual conduct, MICH. COMP. LAWS § 750.520b(1)(f). As a result of his conviction,

Petitioner is serving a sentence of 35 months-to-20 years imprisonment. The petition raises three

claims: (1) the state courts erroneously failed to conduct an in camera review of the complaint's

psychiatric records and therefore could not reasonably adjudicate his ineffective assistance of

counsel claim; (2) the prosecutor committed misconduct in closing and rebuttal arguments; and (3)

Petitioner's trial attorney provided ineffective assistance of counsel. The Court will deny the petition

because Petitioner's claims do not merit habeas relief. The Court will also deny Petitioner a

certificate of appealability.

Background

        This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals,

which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v.*

*Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant, who was 26, returned to live with his parents after having completed his service with the United States Army. In June 2008, he went to a local restaurant and bar. At the bar, defendant began to interact with JK, who was the mother of a girl that he had known from high school. While talking with defendant, JK recalled that her daughter had expressed an interest in him. JK offered to give her daughter's phone number to him and he called her and spoke with her. At some point, defendant asked JK if she wanted a shot of liquor and she agreed, but left to use the bathroom. When she returned, she saw the shot on the bar and drank it. She testified that she did not feel right after the drink and another witness testified that, although she was not intoxicated, JK seemed "off."
>
> JK left the bar shortly before two in the morning. She testified that she fell as she was leaving and her knees and ankles were bleeding. At this point, defendant asked her if she would like a ride home and she agreed. Defendant drove JK to her home. He pulled into the garage and JK got out and opened the door that led into the house. She said that defendant suddenly appeared behind her. He pushed her down, took her clothes off, and eventually raped her. After she warned him that her children would be home soon, defendant dressed and prepared to leave. JK testified that, as he was leaving, he taunted her: "well I guess this means I can't date your daughter."
>
> Defendant testified that he was drunk on the night in question. He stated that, after he drove JK home, she gave him a tour of her home. He said he made advances and she was receptive. They had sex and then he left. He denied that he pushed her or forced her to have sex. And, although he admitted that he had asked JK to set him up with her daughter at the bar, he denied that he said anything to her about dating her daughter while at JK's home.
>
> The jury rejected defendant's contention that the sexual encounter was consensual and found him guilty of criminal sexual conduct in the first degree.

*People v. Ring*, No. 298074, 2011 WL 4104959 at *1, (Mich. Ct. App. Sept. 15, 2011).

Following his conviction and sentence, Petitioner's trial lawyer subpoenaed JK's disability insurance company and personal psychologist to obtain her medical and psychological records for a restitution hearing and an anticipated motion for a new trial. The insurance company refused to provide the records. JK's psychologist, however, provided the records. During the restitution hearing, the trial court ordered Petitioner's lawyer to return the records.

2

Then, in September 2010, Petitioner filed a sealed motion for a new trial and a release of the psychological records or, alternatively, for an in camera review of the records under Michigan Court Rule 6.201. The trial court held a hearing on the motion, and afterwards it issued an opinion and order denying Petitioner's request for an in camera review of the records. The trial court stated that the requested materials violated the Health Insurance and Portability Accountability Act (HIPAA), the Michigan Public Health Code, and the Michigan court rules. The trial court ordered the records to be returned to the complainant as a sanction under Michigan Court Rule 6.201(J). The court also denied the request for an in camera review of the records. The court noted that under *Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987), a defendant does not have a confrontation right to pre-trial discovery. The court concluded that a defendant also does not have a post-trial right to discovery for the purpose of filing a motion for a new trial.

Petitioner's appellate counsel then filed a claim of appeal and a motion to remand the case to the trial court for an in camera review of the materials. Counsel also filed a brief on appeal raising the three claims raised in the instant petition. The Michigan Court of Appeals denied the motion for remand and affirmed Petitioner's convictions in an unpublished opinion. Id.

Petitioner obtained new appellate counsel who filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims as in the Michigan Court of Appeals. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. *People v. Ring*, 491 Mich. 854 (2012) (table).

Petitioner then obtained a third appellate counsel who filed the current habeas petition.

Standard of Review

3

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)(quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as

4

'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)(*citing Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* "[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. at 786.

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.*  Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*, at 786-787.

Discussion

A. Complainant's Psychiatric Records

5

Petitioner makes several claims regarding the trial court and state appellate court's handling of his post-trial request for an in camera review of the complainant's psychiatric records. As noted, after the trial, Petitioner's trial counsel subpoenaed the complainant's psychiatric records as a result of her statement that she had received eight-days inpatient psychiatric treatment after the assault and had attempted suicide. The complainant's therapist complied with the subpoena, and sent counsel the records. The trial court determined that the subpoena violated HIPPA and Michigan Court Rule 6.201, and as a sanction, the trial court ruled that it would not review the records in camera and ordered them returned to the complainant. As a result of these circumstances, Petitioner alleges that he was: (1) denied his right to present a defense, and (2) that his trial attorney was ineffective for failing to make a proper request for in camera review of the records prior to trial.

On direct appeal, Petitioner requested the Michigan Court of Appeals to conduct its own in camera review of the records to determine whether Petitioner had a colorable right to present a defense and could demonstrate prejudice to support his ineffective assistance of trial counsel claim. He asserted that *Pennsylvania v. Ritchie*, 480 U.S. 39, 53-54 (1987), and similar state cases, entitled him to in camera review of the records. Nevertheless, the state appellate court declined to review the records. As a result, Petitioner asserts that his claim was not truly adjudicated on the merits, and that he is therefore entitled to de novo review of his claims, including an in camera review of the records by this Court.

Respondent asserts that the state court adjudication of these claims did not run afoul of any clearly established Supreme Court law. Respondent notes that there is no constitutional right to discovery at all in criminal proceedings, that *Ritchie* does not create the right asserted by Petitioner, that ordering the return of illegally subpoenaed records and denying in-camera review was a

6

legitimate sanction imposed by the trial court, and that Petitioner cannot show how he was prejudiced by his counsel's failure to try to obtain the disputed records prior to trial.

Contrary to Petitioner's assertions, under clearly established Supreme Court law, a criminal defendant does not have a right to discover and use confidential or privileged information to impeach a witness. In *Pennsylvania v. Ritchie*, 480 U.S. 39, 53-54 (1987), a plurality of the Supreme Court ruled that a defendant's right of cross-examination was not violated when a child protective service agency refused to turn over its confidential records to him, on the ground that the records were privileged under state law. *Id*. at 43-46. The *Richie* plurality determined that "the right to confrontation is a trial right" and declined "to transform the Confrontation Clause into a constitutionally compelled rule of pretrial discovery." *Id*. at 52. The plurality stated that "[t]he ability to question adverse witnesses . . . does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony. Normally the right to confront one's accusers is satisfied if defense counsel receives wide latitude at trial to question witnesses." *Id*. at 53 (footnote omitted). The trial court in that case permitted the defendant's attorney to cross-examine the complainant extensively. Nevertheless, the Court noted that the privilege at issue was a qualified one under state law, and ordered that the lower Pennsylvania court examine the records in camera on remand to determine whether the defendant's defense was prejudiced by their exclusion.

In *Middlebrooks v. Bell*, 619 F. 3d 526, 541-43 (6th Cir. 2010); *judgment vacated on other grounds*, 132 S. Ct. 1791, 182 L. Ed. 2d 612 (2012), a case cited by neither party, the Sixth Circuit refused to find a Confrontation Clause violation involving a claim strikingly similar to the one brought by Petitioner in the present case. In *Middlebrooks*, the trial court denied the petitioner's

request to examine a witness's psychiatric records for impeachment purposes, as well as his request to conduct an in camera inspection of those records. *Id*. at 541. The petitioner was in other respects given a full opportunity to cross-examine the witness. *Id*. at 542. The Sixth Circuit held, "[i]t is clear . . . that for now there is no clearly established federal law indicating that the trial court's failure to order disclosure of [the witness'] hospital records violated [the defendant's] confrontation rights." *Id*. at 542-43. The Sixth Circuit further emphasized that the defendant's trial counsel "received wide latitude to question" the witness. *Id*. at 543.

As was the case in *Middlebrooks*, under Michigan law, a general unqualified privilege exists with regard to confidential information acquired from an individual consulting a psychologist in a professional capacity that is necessary for the psychologist to render services. MICH. COMP. LAWS § 333.18237. The Supreme Court also has recognized a psychotherapist-patient privilege. *Jaffee v. Redmond*, 518 U.S. 1 (1996). Setting aside the questionable applicability of HIPPA to this case, the Michigan Court of Appeals held that Petitioner's request for the records did not withstand the privilege created by state law.  The state court stated that to demonstrate entitlement to in camera review of the records, Petitioner had to demonstrate a "good faith belief, grounded in articulable fact, that there [was] a reasonable probability that [the] records . . . [were] likely to contain material information necessary to the defense," but that Petitioner failed to do so. *Ring*, 2011 WL 4104959, at *3. Accordingly, unlike *Ritchie*, there was no requirement for the state court to conduct an in camera review of the unqualified privileged records.[1]

Also as in *Middlebrooks,* Petitioner was permitted adequate opportunity to cross-examine

---

[1]The extent that Michigan law may or may not have permitted in camera review in these circumstances is irrelevant. Habeas relief may not lie for errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

8

the complainant and to question her regarding all aspects of the assault and her subsequent actions. *See* T I 265-T II 126. Twice during cross-examination the subject of the complainant's suicide attempt and resulting hospitalization came up without objection. *See* T II, 53, 120. Therefore, the trial court's refusal to review the psychological records in camera did not infringe upon Petitioner's opportunity to subject the prosecution's case to meaningful adversarial testing – that was accomplished by defense counsel's ability to cross-examine the complainant. Thus, the Court concludes that, in light of the Sixth Circuit's rejection of a similar claim in *Middlebrooks*, the state appellate court's decision that the trial court acted properly in declining to conduct an in camera review was not an objectively unreasonable application of Supreme Court precedent. *See Litteral v. Palmer*, 2010 U.S. Dist. LEXIS 64094 (E.D. Mich. June 29, 2010). That is, the decision "was [not] so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, at 786-787.

The fact that the Michigan Court of Appeals likewise failed to conduct an in camera review of the complainant's psychological records does not change the result or require this Court to examine the records. The state appellate court found that the trial court did not err in failing to conduct an in camera review because the records were subject to privilege under state law. As stated, there is no clearly established right under Supreme Court precedent for a court to conduct such a review under these circumstances. Thus, there is no clearly established right to have an appellate court conduct its own in camera review to reasonably adjudicate such a claim on the merits. In any event, because this claim was adjudicated on the merits in the state court, the Court's review of this claim is "limited to the record that was before the state court." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). Contrary to Petitioner's request, this Court may not conduct its own in camera review

9

of the records to judge the reasonableness of the state court decision.

As for Petitioner's ineffective assistance of counsel claim, he asserts that he is entitled to de novo review because the state courts did not, and could not absent in camera review, reasonably rule on whether Petitioner was prejudiced by the failure of his counsel to move for the records prior to trial. But this argument hinges on the premise that Petitioner had some sort of right under state law to review the privileged records prior to trial that could have been exercised had a timely request been made. Petitioner notes that if he demonstrated a "good faith belief, grounded in articulable fact, that there is a reasonable probability that records protected by privilege are likely to contain material information necessary to the defense," in camera review is warranted under state law. See Mich. Ct. R. 6.201(C)(2). Petitioner tried to meet this standard in his pleadings with the Michigan Court of Appeals, and even in his petition he attempts to show how he met this standard under state law. *See* Petitioner's Brief, pp. 28-29. The simple fact is that the state court rejected the argument that these assertions met the burden for allowing in camera review under state law despite the privilege. Accordingly, Petitioner cannot show that his counsel's failure to act earlier would have resulted in review of the records. That is, based on the findings of the state appellate court, which rested on state law, Petitioner has not shown a reasonable probability that the result of his trial would have been different had his counsel acted earlier.

The state court adjudication of Petitioner's first claim therefore was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court precedence.

B. Prosecutorial Misconduct

Petitioner next claims that the prosecutor committed misconduct by making improper

comments during closing argument. Petitioner asserts that the prosecutor: (1) offered her own opinion that he was a liar, (2 ) relied on the prestige of the sexual assault nurse in encouraging a finding of guilt, (3) shifted the burden of proof, and (4) denigrated defense counsel. Respondent asserts that the Michigan Court of Appeals reasonably rejected the claim on the merits.

The United States Supreme Court has made clear that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *see also Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly*); *Parker v. Matthews*, 132 S.Ct. 2148, 2153, 183 L. Ed. 2d 32 (2012) (confirming that *Donnelly/Darden* is the proper standard).

Here, the Michigan Court of Appeals rejected Petitioner's claims of prosecutorial misconduct as follows:

> Finally, defendant argues that the prosecutor engaged in misconduct that denied him a fair trial. Specifically, he argues that the prosecutor engaged in misconduct by stating her personal belief that defendant lied, by noting that the nurse had testified that JK's injuries were consistent with sexual assault, by arguing that the jury should consider why defendant did not call certain witnesses to testify, and by suggesting that defendant's lawyer was attempting to mislead the jury. Defendant further argues that his trial counsel was ineffective for failing to object to these instances of misconduct. This Court reviews preserved claims of prosecutorial misconduct de novo to determine whether the misconduct deprived the defendant of a fair trial. *People v. Cox*, 268 Mich. App 440, 450–451 (2005). However, to the extent that the claims of error were unpreserved, this Court reviews them for plain error affecting the defendant's substantial rights. *Id*. at 451.

B. ANALYSIS

Defendant's first argument is that the prosecution denigrated his trial counsel during

11

closing and rebuttal arguments by suggesting that counsel was attempting to mislead the jury. Defendant specifically takes issue with the following closing arguments:

> So, in a minute Mr. Brewer's going to get up. He's gonna make statements. And when you listen to everything he has to tell you, look at them through the eyes of your common sense, your general [everyday] knowledge. And think about whether some of the things he's sayin' to you are really gonna make sense. Does it really make sense that [JK], who was trying to hook her daughter up with this young man, who had fallen, scraped her knees, was in pain, and bloody, was crying on the way home, but even by the words by the Defendant, and complaining of pain, within this short period of time, is then making out with him. Think about that. Apply your common sense when you listen to the version of events. Because common sense is defied, reality is defied, by believing that set of events.

Defendant also challenges the prosecutor's rebuttal:

> Now, [defense counsel] talks about all these—what he considers to be inconsistencies in [JK's] testimony. And you know what, there are some things that are different. There were some things that are a little bit inconsistent.... So, in terms of some of the inconsistencies about things that were surrounding this night, you know what, there were inconsistencies.... [Defense counsel] tested her credibility about all kinds of things surrounding the event, but did he ever really testify—or did he really ever elicit big inconsistencies about the assault itself[?] Did he ever elicit from her how things were different[?] Did he bring up inconsistencies and how she talked about being pushed onto the floor, be—or being pushed onto the couch, the glass breaking, the—him assaulting her in the one room, her going into the bathroom, him forcing his way into the bathroom, him trying to put his penis into her buttocks, and then him going back and having sex with her again[?] Did he point out any inconsistencies in the meat of it or were they all around it [?] Trying to have shiny objects on the edge that you'll focus your attention to instead of where it needs to be on what happened. Think about that when you go back there. I'll leave it to you. You guys are smart. You'll know what to do with that testimony.

A prosecutor has great latitude when arguing at trial. *People v. Fyda*, 288 Mich. App 446, 461 (2010). Nevertheless, a prosecutor cannot personally attack defense counsel. *People v. Likine*, 288 Mich. App. 648, 659 (2010). And, a prosecutor cannot suggest that defense counsel is intentionally attempting to mislead the jury. *Fyda*, 288 Mich. at 461. When a prosecutor does so, the prosecutor "is in effect stating that

defense counsel does not believe his own client." *Id*.

In the present case, however, the prosecutor's arguments were proper. The prosecutor did not personally attack defense counsel. *Likine*, 288 Mich. App. at 659. The prosecutor's argument that the jurors should use their "common sense" when considering defense counsel's arguments was not inappropriate. See *People v. Lawton*, 196 Mich. App. 341, 355 (1992) (stating that the prosecutor's repeated references to the jury's common sense were neither disparaging nor prosecutorial misconduct). The prosecutor was simply arguing the evidence when she asserted that defendant's version of the sexual encounter defied common sense; the prosecutor was not required to confine her argument to the blandest possible terms. See *People v. Dobek*, 274 Mich. App. 58, 66 (2007). Furthermore, although the prosecutor argued that defense counsel was attempting to focus the jury's attention on minor inconsistencies in JK's testimony, the prosecutor did not suggest that defense counsel did not believe defendant. See *Fyda*, 288 Mich. App. at 462. During rebuttal argument, a prosecutor may suggest that defense counsel attempted to distract the jury during closing argument. *Id*.; see also *People v. Watson*, 245 Mich. App. 572, 593–594 (2001) (stating that the prosecutor properly suggested during rebuttal argument that defense counsel attempted to distract the jury by focusing on discrepancies in testimony instead of the truth of the big picture).

Next, defendant argues that the prosecutor denied him a fair trial by improperly stating her personal belief that defendant lied. A prosecutor may argue the evidence and all reasonable inferences from the evidence. *People v. Bahoda*, 448 Mich. 261, 282 (1995). Indeed, "[a] prosecutor may argue from the facts that a witness, including the defendant, is not worthy of belief." *People v. Launsburry*, 217 Mich. App. 358, 361 (1996). However, prosecutors may not express their personal opinion of a defendant's guilt. *Bahoda*, 448 Mich. at 282–283. And, prosecutors may not suggest that they have special knowledge of the veracity of witnesses. *People v. Matuszak*, 263 Mich. App. 42, 54 (2004).

In closing, the prosecutor argued that JK's version of events was credible and that defendant's version was not worthy of belief:

> The Judge is going to tell you that it is your job to consider credibility. It is your job to decide which witnesses to believe.... Do you really think that [JK] would go through all of this just when she, if we want to believe the Defendant, some romp after bein' at the bar. Do you think she's really gonna go through all this. A couple of days and then going to a sexual assault nurse examiner, having an evasive examination with a speculum by this nurse that she doesn't know, attempting suicide the day after that occurs, being placed in the stress unit at Owosso Memorial Hospital for eight days, and then waiting the two years to be here, if that's not what happened. What is her

13

motivation to say anything other than that's what happened.

\* \* \*

Now, we know Dan Ring doesn't hesitate to lie because he lied to Trooper Corriveau. You saw it on that video tape. Trooper Corriveau gave him all fair warning and said, listen, you need to be straight with me.... And when asked did anything happen the Defendant said no. And it was only when confronted with the possibility that there could be physical evidence, well, oh, I guess that was a lie so let me tell this version of events. He doesn't hesitate to lie. He doesn't hesitate to lie to the trooper. And I guarantee as he got on this witness stand he wouldn't hesitate to put on a nice show and lie to you. But look at everything he had to say. Compare his testimony as it was from an interview very close in time versus the performance that we received in the courtroom and decide.

\* \* \*

Consider credibility. Do people who are afraid that they're going to be in trouble for something lie on occasion, yes. Is [JK] gonna be in trouble for anything, absolutely not; no motivation. Dan Ring does he have motivation, absolutely. Does the witness have any bias, prejudice, or personal interest in how this case is decided, Dan Ring does. Does the witness have any special reason to tell the truth or any special reason to lie. I'm sure Dan Ring would let down a lot of people if they knew that he took advantage of this woman who was incapacitated, bleeding, and he had sex with her because he was horny. So, does he have reason to try to not let those people down, absolutely. But does that mean you should believe what he has to say, absolutely not.

The prosecutor's arguments were not inappropriate. The prosecutor properly argued on the basis of the facts that the jury should believe JK. *People v. McGhee*, 268 Mich. App. 600, 630 (2005). The prosecutor properly argued that defendant was not worthy of belief on the basis of the evidence, specifically, defendant's inconsistent statements to a police officer. See *Bahoda*, 448 Mich. at 281–282. The prosecutor neither expressed a personal opinion of defendant's guilt nor suggested that she had special knowledge of either JK's or defendant's credibility. *Id*. at 282–283. The prosecutor also did not imply that she had special knowledge of JK's or defendant's credibility by addressing whether either JK or defendant had a motive to lie. See *Thomas*, 260 Mich. App. at 455 ("In fact, the prosecutor made no comments at all about his personal knowledge or belief regarding the truthfulness of the police witnesses; he merely argued that the officers had no reason to lie."). Thus, these arguments were not improper.

14

Defendant also argues that the prosecutor improperly emphasized the nurse's testimony that JK's injuries were consistent with her allegation of sexual assault. As already noted above, the nurse's testimony was properly admitted. And, therefore, the prosecutor could properly refer to that evidence in arguments. See *People v. Pauli*, 138 Mich. App. 530, 542 (1984).

Finally, defendant argues that the prosecutor improperly shifted the burden of proof onto defendant by arguing during rebuttal that the jury should consider why defendant did not call certain witnesses to testify. Defendant specifically takes issue with the following statements:

> The first thing is that, yes, it is my burden of proof.... But there's one thing that you have to consider, is that once the Defendant chooses to present evidence, then you must also consider that evidence and its credibility.... You have to consider if he decides to present witnesses people [sic] that he didn't call. You know, he wants to stand here and say, well, you know, it's not—not that unusual to think that ... she might have found him attractive and somehow ... wanted to engage in the sexual conduct because he was attractive.... And ... again, something that he didn't tell to Trooper Corriveau, but he did say on the witness stand is well she came up when I was talkin' to Sarah and she was like feelin' my arm, feelin' my muscles.... If that really happened, where's Sarah[?] He brings all these bartenders to try to trash out [JK].... But where's Sarah[?] ... That witness isn't here 'cause that didn't happen. You know, where's this other guy Dennis[?] You know, first he tells me, oh, all these friends from high school and then it's like I only know one person's name. Is that credible[?] So, you know what, yes, I have the burden of proof, but you can consider once he's presented evidence whether it's credible. And you can consider what's missing from what he presented.

When read in context, these remarks were not an improper attempt to shift the burden of proof. *People v. Abraham*, 256 Mich. App. 265, 273 (2003). Because defendant presented an alternative theory to the case, the prosecutor could point out the weakness in defendant's case by commenting on defendant's failure to produce corroborating witnesses for his theory. *People v. Fields*, 450 Mich. 94, 111–112 (1995). Moreover, the trial court properly instructed the jury after closing arguments that the prosecution had the burden of proving each element of the crimes charged beyond a reasonable doubt and that defendant was not required to prove his innocence or do anything. And a jury is presumed to follow a trial court's instructions. *Fyda*, 288 Mich.App at 465.

The prosecutor did not engage in misconduct.

15

*Ring*, 2011 WL 4104959, at *7-11.

The Michigan Court of Appeals reviewed Petitioner's claims of prosecutorial misconduct in light of the record as a whole and, whether the state court reviewed the alleged errors under an abuse of discretion standard or a plain error standard, it looked first to whether the complained conduct was improper. The state court next determined whether the improper conduct rendered Petitioner's trial unfair. Considering the extensive fact-specific state court analysis of Petitioner's prosecutorial misconduct claims, Petitioner fails to establish that the state court determination rejecting his prosecutorial misconduct claims were contrary to, or an unreasonable application of, established United States Supreme Court precedence. Accordingly, Petitioner is not entitled to habeas relief based on his prosecutorial misconduct claims.

### C. Ineffective Assistance of Counsel

Petitioner's third claim asserts that his trial counsel provided ineffective assistance of counsel. Specifically, Petitioner claims that his counsel: (1) failed to request an in camera review of the victim's psychological records prior to trial as discussed above; (2) failed to object to the testimony of a nurse who conducted the sexual assault examination; and (3) failed to object to the prosecutorial misconduct discussed above. Petitioner's first and third allegations fail for the reasons discussed above. Respondent asserts that the Michigan Court of Appeals reasonably adjudicated Petitioner's second allegation of ineffective assistance of counsel.

The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs the Court's analysis of ineffective-assistance-of-counsel claims. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To establish a claim of ineffective assistance of counsel, a defendant must show both

16

deficient performance and prejudice. *Premo v. Moore*,  131 S. Ct. 733, 739, 178 L. Ed. 2d 649

(2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).

Because of the high deference accorded state court determinations by AEDPA, establishing

that counsel was ineffective and, therefore, a petitioner was denied his right to counsel under the

Sixth Amendment is difficult. The Supreme Court recently explained:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559
> U.S. 356, 371 (2010) . . . . The question is whether an attorney's representation
> amounted to incompetence under "prevailing professional norms," not whether it
> deviated from best practices or most common custom. *Strickland*, 466 U.S. at 690.
>
> Establishing that a state court's application of Strickland was unreasonable under §
> 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d)
> are both "highly deferential," *id.*, at 689; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7
> (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S.
> at 123. The *Strickland* standard is a general one, so the range of reasonable
> applications is substantial. *Ibid*. Federal habeas courts must guard against the danger
> of equating unreasonableness under *Strickland* with unreasonableness under §
> 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were
> reasonable. The question is whether there is any reasonable argument that counsel
> satisfied *Strickland's* deferential standard.

*Richter*, 131 S. Ct. at 788.

On habeas review, "[t]he question 'is not whether a federal court believes the state court's

determination' under the *Strickland* standard 'was incorrect but whether that determination was

unreasonable — a substantially higher threshold.'" *Knowles*, 556 U.S. at 123 (quoting *Schriro v.*

*Landrigan*, 550 U.S. 465, 473(2007)). Moreover, "because the *Strickland* standard is a general

standard, a state court has even more latitude to reasonably determine that a defendant has not

satisfied that standard." *Id*. (citing *Alvarado*, 541 U.S. at 664).

Here, the Michigan Court of Appeals rejected Petitioner's second allegation of ineffective

assistance of counsel as follows:

We also do not agree that defendant's counsel was ineffective for failing to object to the nurse's testimony that JK's injuries were consistent with sexual assault. Defendant asserts that the nurse could not properly vouch for JK's credibility and could not testify that JK was actually sexually assaulted. Defendant insists that the logical inference from the nurse's testimony was that JK told the truth. It is improper for a witness to comment on the credibility of another witness. *People v. Buckey*, 424 Mich. 1, 17 (1985). And, it is also improper for a witness to express an opinion on a defendant's guilt or innocence. *People v. Bragdon*, 142 Mich.App 197, 199 (1985).

At trial, the prosecutor questioned the nurse about JK's treatment:

Q. And what form of treatment did you provide to [JK]?
A. Her—because her physical findings were consistent with her history of sexual assault, I gave a prophylactic antibiotics [sic].

\* \* \*

Q. And as a result of your evaluation, you did indicate that your physical findings or your examination of [JK] was consistent with what she said, is that correct?

A. Yes.

Q. Now, to be fair, is there anyway during the course of an examination of the patient for sexual assault that you can actually say, oh, when I see this they've been sexually assaulted versus not?

A. No.

\* \* \*

Q. Just—just confirming, doing this genital examination of a patient, can you say with any degree of certainty whether they've been sexually assaulted or not?

A. No.

Q. Is that in any way possible?

A. No, it isn't.

Q. But as a sexual assault nurse examiner you look at the history, look at what you've seen physically, and make that determination that it appears consistent with?

A. Correct.

Contrary to defendant's assertions, the nurse did not comment on JK's credibility.

*Buckey*, 424 Mich. at 17. And, the nurse did not express an opinion on defendant's guilt or innocence. *Bragdon*, 142 Mich. App. at 199. Rather, she properly expressed an opinion regarding the source of JK's injuries that was rationally based on her perceptions and helpful to a determination of a fact in issue. M.R.E. 701. Therefore, counsel was not ineffective for failing to make a futile objection or argue a meritless position. *People v. Thomas*, 260 Mich.App 450, 457 (2004).

Defendant has not shown that his trial counsel's performance fell below an objective standard of reasonableness under prevailing professional norms that prejudiced his trial.

*Ring*, 2011 WL 4104959, at *7-11.

This decision did not constitute an unreasonable application of the *Strickland* standard. Contrary to Petitioner's allegations, the nurse did not opine that the victim was being truthful when she stated that she had been sexually assaulted. Rather, the nurse testified that her examination resulted in  findings that were consistent with a person who was assaulted, but that there was no way to tell based on the examination whether an assault actually occurred. Petitioner argues that such testimony was nevertheless objectionable under *People v. Beckley*, 456 N.W.2d. 391 (1990) and *People v. Patterson*, 537 N.W.2d 857 (1995), but these state law objections were rejected by the state appellate court. In analyzing a petitioner's ineffective assistance of counsel claim, an expression of state law by the state court is binding on this Court. *See Basile v. Bowersox*, 125 F. Supp. 2d 930, 960 (E.D. Mo. 1999); *see generally Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Thus, an objection by counsel would have been futile because the Michigan Court of Appeals found that the nurse's testimony was admissible. Counsel cannot be deemed ineffective for failing to raise a meritless objection. *See Bradley v. Birkett*, 192 Fed. Appx. 468, 475 (6th Cir. 2006); *Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995); *Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir. 1993). This claim is therefore without merit.

19

Accordingly, the petition will be denied.

Certificate of Appealability

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if Petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.* at 336-37. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll.§ 2254.

Petitioner has not demonstrated a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is not warranted in this case. The Court further concludes that Petitioner should not be granted leave to proceed *in forma pauperis* on appeal, as any appeal would be frivolous. See Fed. R. App. P. 24(a).

21

Conclusion

Accordingly, IT IS HEREBY ORDERED that the petition for writ of habeas corpus is DENIED.

IT IS FURTHER ORDERED that a certificate of appealability is DENIED.

IT IS FURTHER ORDERED that permission to proceed *in forma pauperis* on appeal is DENIED.

IT IS SO ORDERED.


S/Lawrence P. Zatkoff
Hon. Lawrence P. Zatkoff
United States District Judge

Dated:  July 24, 2014

22